# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANNA C., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, <br><br> Defendant. | Civil Action <br> No. 21-16975 (CPO) <br><br> **OPINION** |

**Appearances:**

Steven Gaechter
440 State Highway 17, Suite 3A
Hasbrouck Heights, NJ 07604

   *On behalf of Plaintiff Anna C.*

Mark J. Dorval
SOCIAL SECURITY ADMINISTRATION
300 Spring Garden Street
Philadelphia, PA 19123

   *On behalf of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.*

**O'HEARN, District Judge.**

This matter comes before the Court on an Appeal by Plaintiff Anna C.[1] ("Plaintiff") from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Commissioner"). (Compl., ECF 1). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **AFFIRMS** the Acting Commissioner's decision.

I.  BACKGROUND

The Court recites herein only those facts necessary for its determination of this Appeal.

A.  Administrative History

On July 21, 2019, Plaintiff filed a Title II application for a period of disability and disability insurance benefit. (AR 12). Plaintiff also filed a Title XVI application for supplemental security income ("SSI) on the same day. (AR 12). In both applications, Plaintiff alleged disability beginning August 10, 2018. (AR 12). These claims were denied initially on December 18, 2019, and upon reconsideration on February 28, 2020. (AR 12). Plaintiff appeared and testified at a hearing on December 2, 2020, held telephonically in light of the COVID-19 pandemic. (AR 12). Plaintiff, represented by counsel, testified at the hearing as did vocational expert ("VE") Meredith Ross. (AR 12). After the hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled in a decision dated January 13, 2021. (AR 12). The Appeals Council denied her request for review on August 3, 2021. (AR 1). This Appeal followed. (Compl., ECF No. 1).

B.  Plaintiff's Background and Testimony

Plaintiff is a forty-eight-year-old woman who lives with her husband, four children, and a dog in New Jersey. (AR 33–34, 226). She received her GED and completed some college. (AR

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by her first name and last initial.

47). Plaintiff reported sharing childcare duties with her husband - her primary responsibility being preparing meals and doing dishes. (AR 225–26). She occasionally does small loads of laundry, shops for the family, and pays bills online. (AR 228). Outside of household chores, Plaintiff reads, watches television, uses the computer and stays involved with her church. (AR 881). At the hearing, Plaintiff explained that since the alleged onset date of her disability (August 10, 2018), she has not driven a car, attended social functions on a regular basis, participated in any sports, or traveled outside of the United States. (AR 35).

In her initial SSI and disability claims, Plaintiff alleged that she became disabled as a result of "arthritis, restless leg syndrome, sciatic nerve issues, tendonitis, and hypothyroidism." (AR 56). In addition, Plaintiff suffers from a cervical spine impairment, which she discovered in August 2018 after she was admitted to the hospital for a mini-stroke. (AR 36). To address the symptoms associated with the spinal impairment, Plaintiff underwent cervical spine surgery on July 19, 2019. (AR 39). Plaintiff testified that she continues to have a significant amount of pain from the surgery, that therapy "has not been working," and that she uses a cane to walk. (AR 39).

Prior to August of 2018, Plaintiff worked as a teaching assistant in a daycare and a bus aide to handicapped children. (AR 47–48). In her hearing testimony, Plaintiff reported that she can sit for about 20 to 30 minutes before needing to get up due to her back pain. (AR 40). She also explained that she does "everything with [her] right hand" due to weakness, tendonitis, and numbness in her left hand. (AR 37). However, in two functional reports, one in August 2019 and one in February 2020, Plaintiff reported that her impairments did not affect her ability sit or use her hands, which her husband confirmed. (AR 229, 239, 267).

3

### C. Medical History

Plaintiff has been examined by numerous medical professionals over the years and during the pendency of her disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

1. Bayada Home Health Care Inc.

Post-surgery, Plaintiff was referred to Bayada Home Health Care Inc. by Dr. Camille Green for treatment starting in August 2019 and concluding October 2019. (AR 834). Plaintiff received post-operative care, including wound care to her posterior cervical area. (AR 833). Among other things, Dr. Green requested that Plaintiff receive physical therapy to provide balance training and to be seen by an occupational therapist who could assess changes in Plaintiff's general condition. (AR 833). The plan of care noted that Plaintiff had a good prognosis and that marked improvement in functional status was expected. (AR 834).

2. Yocom, Steven, D.O.

Plaintiff was examined by Dr. Yocom in September 2019 as part of a routine post-operative visit following her cervical fusion spine surgery. (AR 1131). Dr. Yocom noted that Plaintiff had normal post-operative pain, used a walker, and was receiving physical therapy and post-operative care by nursing staff in her home. Upon examination, Dr. Yocom reported that Plaintiff was in no apparent distress, was well developed and nourished, had normal muscle strength and tone in her upper and lower extremities, and that her incision was healing well. (AR 1136). These findings were all reaffirmed in a subsequent routine post-operative visit in December. (AR 1151). However, in the notes of the December 2019 visit, Dr. Yocom described his disappointment that "Anna is doing so poorly." (AR 1155). Specifically, he recorded that she was suffering pain as a result of muscle spasm, and would therefore change her medications. (AR 1155).

   3.  <u>Juan Carlos Cornejo, D.O.</u>

  Plaintiff was evaluated by Juan Carlos Cornejo, D.O., in October 2019 at the request of the State of New Jersey Division of Disability Determination Services ("DDDS"). (AR 1043). The orthopedic evaluation was performed within two months of Plaintiff's cervical fusion surgery. (AR 1046). Based on his evaluation of Plaintiff, Dr. Cornejo found that she would have difficulty bending and turning her neck and back. (AR 1046). He noted that she would be able to sit for a reasonable amount of time with "needed breaks." (AR 1046). Dr. Cornejo further concluded that Plaintiff had good use of her upper extremities for movements such as reaching, and that she had good functionality of her right and left hands. (AR 1046). He observed no limitations to fingering, finding that she would be able to handle fine and small sized objects. (AR 1046).

   4.  <u>State Agency Medical Consultants: Arthur Pirone, M.D. and Deogracias Bustos, M.D.</u>

  Plaintiff was assessed by the New Jersey DDDS initially in January 2019 and on reconsideration in February 2020. (AR 121–37, 82–107). Both examiners concluded, among other things, that Plaintiff could stand and/or walk (with normal breaks) for a total of four hours per day, and that she could sit (with normal breaks) for a total of about six hours in an eight hour workday. (AR 90). Based on the findings in both assessments, the examiners concluded that Plaintiff would be capable of performing a range of light work, and that she was not disabled. (AR 92–93).

  **D.**  **The ALJ's Decision**

  The ALJ followed the five-step sequential evaluation process for determining disability claims and found that Plaintiff was not disabled in a decision dated January 13, 2021. (AR 15–22). First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 10, 2018. (AR 15). Second, the ALJ determined that Plaintiff had several severe impairments, including degenerative disc disease of the cervical spine, degenerative disc

disease of the lumbar spine, and obesity. (AR 15). The ALJ noted that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 16). The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a range of sedentary work as defined in 20 C.F.R. 404.1567(a),[2] with some additional exertional limitations. (AR 16). The ALJ explained

> [t]he claimant can lift and/or carry and push and/or pull up to 10 pounds occasionally and 10 pounds frequently. Further, she can sit for up to six hours in an eight-hour workday and stand and/or walk for up to two hours in an eight-hour workday. Work must allow for the frequent use of a cane for ambulation and weight bearing. The claimant cannot reach overhead with the dominant left upper extremity. She can occasionally reach[,] handle, finger, and feel with the left upper extremity. The claimant can perform occasional rotation, flexion or extension of the neck. She can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but cannot climb ladders, ropes or scaffolds. Finally, the claimant cannot work at unprotected heights or around dangerous heavy machinery or dangerous moving mechanical parts.

(AR 16). Accordingly, relying on the testimony of a VE and considering her RFC, the ALJ found that Plaintiff could no longer perform any of her past relevant work. (AR 20). However, the ALJ further found that the job identified by the VE that Plaintiff could perform existed in significant numbers in the national economy. (AR 21). Therefore, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act since her alleged onset date. (AR 22).

---

[2] Specifically, 20 C.F.R. 404.1567(b) (2022) provides in relevant part—

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

## II. LEGAL STANDARD

When reviewing a final decision of an ALJ regarding a claimant's disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotations omitted) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). That analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

### III.  DISCUSSION

In her Appeal, Plaintiff asserts that the ALJ's findings in Step Four and Step Five are not supported by substantial evidence. The Court will address each argument in turn. For the reasons that follow, the Court affirms the ALJ's decision.

### A. The ALJ's Step Four Residual Functional Capacity Findings are Supported by Substantial Evidence.

Plaintiff argues that the ALJ's decision with respect to Step Four is not supported by substantial evidence. Specifically, she claims that: (1) the ALJ did not properly consider all of the relevant medical evidence in her RFC analysis, and (2) the ALJ failed to account for the fact that Plaintiff would be off-task or absent from work due to severe pain. (Pla. Br., ECF No. 8 at 14).

### 1. The ALJ Properly Considered All of the Relevant Medical Evidence in Plaintiff's RFC analysis.

Plaintiff argues that the ALJ did not give proper weight to the medical evidence of Dr. Cornejo and did not incorporate evidence of Plaintiff's need for home health aide. (Pla. Br., ECF No. 8 at 15). The Court disagrees.

In support of her argument that the ALJ did not properly consider Dr. Cornejo's evaluation, Plaintiff cites Dr. Cornejo's observation that Plaintiff "would have difficulty with bending and turning her neck and back" and "with physically exerting activity in regard to the recent cervical fusion." (Pla. Br., ECF No. 8 at 14-15). However, the ALJ specifically addressed Plaintiff's difficulty with bending and turning by limiting Plaintiff to only occasional "rotation, flexion or extension of the neck" and only occasional balancing, stooping, kneeling, crouching and crawling. (AR 16). The ALJ was not only attentive to the details of Dr. Cornejo's examination, but actually assigned Plaintiff limitations equal to or greater than those proffered by Dr. Cornejo. The Court additionally notes that the ALJ incorporated Dr. Cornejo's recommended limitations despite the fact that Dr. Cornejo's evaluation was performed just three months after Plaintiff's cervical fusion

9

surgery which represents a non-permanent limitation, (AR 1043–44), and in light of the many positive functional abilities reported in the evaluation.[3] (AR 1043–48).

Plaintiff also alleges that the ALJ failed to address evidence that the Plaintiff required the assistance of a home health aide and physical therapy both before and after her cervical fusion. (Pla. Br., ECF No. 8 at 15). Despite the lack of a requirement to make reference to every treatment note, *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001), the ALJ here specifically discussed Plaintiff's home health care twice: (1) Plaintiff "had inpatient and home physical therapy for short periods following the procedure," (AR 18); and (2) Plaintiff's treatment consisted of "short courses of home care and physical therapy" after the cervical fusion, (AR 18). However, the ALJ then noted that the "vast majority of [Plaintiff's] treatment has consisted of medication management and the evidence shows that this conservative therapy provides adequate relief of the alleged symptoms." (AR 18–19). Consequently, Plaintiff's arguments with respect to the sufficiency of the evidence supporting the ALJ's conclusions at Step Four are not persuasive.

> **2. The ALJ Properly Considered Plaintiff's Subjective Complaints and Was Not Bound by Them to the Extent That They Were Not Supported by Subjective Evidence in the Record.**

Plaintiff argues that the ALJ failed to give enough weight to her subjective complaints. (Pla. Br., ECF No. 8 at 15). For the reasons stated below, the ALJ's conclusion with respect to Plaintiff's contradictory statements is supported by substantial evidence.

---

[3] Dr. Cornejo noted that Plaintiff: was able to get on and off the examination table, go from lying down to sitting up and dress herself; was comfortable in a sitting position; had no lower back pain or radiating pain during leg raising tests both while sitting and while lying down; would be able to walk and stand for a reasonable amount of time with needed breaks; would be able to sit for a reasonable amount of time with needed breaks; had good use of her upper extremities for movements such as reaching; had good functionality of her right and left hands; would be able to handle fine and small sized objects; and had no significant limitations to fingering. (AR 1043–48).

In support of her claim, Plaintiff points to her testimony that she suffered from constant neck and lower back pain, difficulty raising or using her left dominant arm, and testimony concerning her need for pain management. (Pla. Br., ECF No. 8 at 14-15). The ALJ explicitly cites to the record, specifically exhibits 2F–8F and 10F–12F, to acknowledge Plaintiff's complaints of pain affecting her neck and lower back. (AR 18). While the ALJ is required to consider Plaintiff's subjective complaints, they must be supported by the medical evidence in the record. *Hartranft v. Apfel,* 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529); *see also* 20 C.F.R. § 404.1508. Here, Plaintiff's subjective complaints are contradicted by several positive examinations in the record which highlight normal findings of strength in all four extremities, (AR 1157), and high tonicity of her neck muscles with diminished range of motion, but no abnormal findings, (AR 1250). Plaintiff's complaints are also at odds with her own description of her daily activities, which include performing light household chores, preparing simple meals, doing online shopping for herself and her family, and visiting her family once per month. (AR 225–32, 263–70). Despite this contradiction, the ALJ nonetheless limited Plaintiff to sedentary work that allows for the frequent use of a cane for ambulation and weight bearing, no reaching overhead with the dominant left upper extremity, and only occasional rotation, flexing, or extension her neck. (AR 17).

Plaintiff raises one final argument for the first time in her reply brief: a challenge to the weight assigned to Dr. Yocom's testimony. (Pla. Reply Br. ECF 8 at 3). The Commissioner did not seek the opportunity to respond. As a preliminary matter, the Court notes that "[i]t is improper for the moving party to shift gears and introduce new facts or different legal arguments in the reply brief than [those that were] presented in the moving papers." *D'Aiuto v. City of Jersey City*, No. 06–6222, 2007 WL 2306791, at *4 n.1 (D.N.J. Aug. 8, 2007). However, even if the Court

considered Plaintiff's argument as timely, it is unpersuasive. The ALJ is not required "to make reference to every relevant treatment note in a case where the claimant, . . . has voluminous medical records," *Fargnoli*, 247 F.3d at 42, and here, the ALJ did, in fact, acknowledge most of Dr. Yocom's observations, despite not referencing him by name. (AR 18). Further, Plaintiff merely provides conclusory statements that the findings by Dr. Yocom demonstrate that she would "clearly" be unemployable and this Court declines to re-weigh evidence that was properly considered by the ALJ. Consequently, the Court finds that the ALJ's findings are supported by substantial evidence.

### B.     The ALJ's Step Five Analysis is Supported by Substantial Evidence.

In her challenge to the ALJ's Step Five findings, Plaintiff makes three arguments: (1) that the ALJ erred by stating that the job referenced by the VE was a "representative" job instead of the "only" job suggested; (2) that the job of call-out operator does not exist in significant numbers; and (3) that the ALJ should have requested that the VE testify regarding the number of regional jobs available. (Pla. Br., ECF No. 8 at 16–19).

#### 1.     The ALJ's Misstatement of the VE's Testimony in his Step Five Analysis is Not Dispositive.

Plaintiff contends that the ALJ "entirely misrepresented" the testimony of the VE by indicating that the VE testified that the job of call-out operator was "representative" of multiple occupations Plaintiff could perform. (Pla. Br., ECF No. 8 at 16). While the ALJ did err in his wording, such error was harmless and does not negate the fact that the ALJ's Step Five findings are supported by substantial evidence.

The ALJ stated that "[t]he vocational expert testified that given all of these factors [claimant's age, education, work experience, and residual functional capacity] the individual would be able to perform the requirements of *representative occupations* such as call-out

operator." (AR 21) (emphasis added). Plaintiff points out that the wording used by the ALJ implies that the VE provided multiple occupations that the Plaintiff could perform, with call-out operator being an example of one. This is contrary to the VE's actual findings which show only one occupation that exists in the national economy that the Plaintiff could perform.[4]

To support her claim, Plaintiff cites *Smith v. Astrue*, a case in which a court determined that remand was warranted for the ALJ to obtain a clearer record as to whether there were jobs that existed in significant numbers in the national economy that the Plaintiff could perform. 961 F. Supp. 2d 620 (D. De. 2013). However, in that case, the occupations listed by the VE did not exist in the DOT, and the only similar job was beyond the Plaintiff's exertional and skill level. Here, the job provided by the VE is clearly listed in the DOT, matches the Plaintiff's RFC, and accommodates the additional exertional limits imposed by the ALJ. (AR 52). This is sufficient as the ALJ need only identify *a single job* that the claimant can perform that exists in significant numbers in the national economy. *Jean-Pierre v. Comm'r of Soc. Sec.*, No. 16-05691, 2017 WL 4316880, at *5 (D.N.J. Sept. 28, 2017) (citing *Lippincot v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 384 (D.N.J. 2013)); 20 C.F.R. § § 404.1566(b), 416.966(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations).").

Despite the ALJ's misstatement of the VE's testimony, Plaintiff has not met her burden of demonstrating that the ALJ's Step Five decision is not supported by substantial evidence.

### 2. The Job of Call-Out Operator Exists in Significant Numbers.

Plaintiff asserts that the job of call-out operator, as described in *The Dictionary of Occupational Titles* (DOT), no longer exists in significant numbers. (Pla. Br., ECF No. 8 at 18).

---

[4] "I only have one [job] with occasional reaching, handling, fingering at the sedentary level with unskilled." (AR 52).

Plaintiff argues that instead of relying on the VE's testimony, the ALJ is bound by "various data including but not limited to the Occupational Outlook Handbook (OOH)." (Pla. Br., ECF No. 8 at 18). While recognizing that the validity of the DOT—and this job in particular, *see July V.M. v. Kijakazi*, No. 21-4141, 2021 WL 590594 (D.N.J. Dec. 8, 2021)—has been called into question, this Court declines to find error that would be in contravention to the SSA regulations, which still use the DOT as the benchmark for VE testimony.

"[T]he Code of Federal Regulations specifically lists the DOT as a source of "reliable job information[.]" 20 C.F.R. § 404.1566(d); *Hearn v. Comm'r of Soc. Sec.*, No. 18-10538, 2019 WL 2710790, at *7 n.5 (D.N.J. June 27, 2019) (citing 20 C.F.R. § 404.1566(d)). Furthermore, "[i]t is not for this Court to reform the methodology that SSA [vocational experts] use to determine available and appropriate jobs in the national economy that match a claimant's RFC." *Jean-Pierre v. Comm'r of Soc. Sec.,* No. 16-05691, 2017 WL 4316880, at *9 (D.N.J. Sept. 28, 2017); *see also Junod v. Berryhill*, No. 17-1498, 2018 WL 5792214, at *4 (W.D. Pa. Nov. 5, 2018) (finding that the "ALJ properly relied on the [vocational expert's] testimony to the extent that it was based upon DOT data" rather than the O*NET).

Here, the ALJ found that the VE reasonably relied on the DOT in providing her testimony. Given that "[a] vocational expert may rely on the DOT, and the ALJ may rely on the [vocational expert's] testimony to the extent it is consistent with the DOT," Plaintiff's argument fails. *Sanabria v. Comm'r of Soc. Sec.*, No. 15-8963, 2017 WL 436253, at *4 (quoting *Estevez v. Comm'r of Soc. Sec.*, No. 14-6337, 2016 WL 3381227, at *7 (D.N.J. June 8, 2016)).

In the interest of exhausting Plaintiff's argument, the Court will also address the underlying claim that the job of call-out operator is obsolete in our modern society. Since this is

the only job identified by the VE, its validity is necessary to affirm the decision below. The duties of a call-out operator are as follows:

> Compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers requests, using telephone. Copies information onto form to update information for credit record on file, or for computer input. Telephones subscriber to relay requested information or submits data obtained for typewritten report to subscriber.

DICTIONARY OF OCCUPATIONAL TITLES, § 237.367–014, 1991 WL 672186 [hereinafter DOT 237.367–014].

As noted by other Courts in this District, this job description does not "unlock memories of the Regan era" and "nothing about [it] is inconsistent with the internet age; they seem to involve a level of customer interaction that remains valuable in the current economy." *Feeley v. Comm'r of Soc. Sec.*, No. 14-4970, 2015 WL 3505512, at *11 (D.N.J. June 3, 2015). In fact, the job of call-out operator appears to incorporate the same duties of an employee of a credit card company. *Id.* Furthermore, the more modern O*Net compilation contains categories that correspond quite closely to the DOT job of call-out operator, contrary to Plaintiff's argument that the job is obsolete. *See Earls v. Comm'r of Soc. Sec.,* No. 9-01465, 2011 WL 3652435, at *7 (N.D. Ohio Aug. 19, 2011) (rejecting an argument that the DOT job categories were outdated where the categories had corresponding entries in O*Net). The O*Net job corresponding to Call Out Operator is "Credit Authorizer, Checker, and Clerk." (O*Net No. 43–4041.00). Both the DOT and the O*Net version of this job involve verifying an individual's credit history using the telephone or other methods. (DOT 237.367–014; O*Net No. 43–4041.00). DOT says that the individual will "[c]ompile[] credit information, such as status of credit accounts, personal references, and bank accounts." (DOT 237.367–014). The more modern O*Net description similarly says that the individual will "[c]ompile and analyze credit information gathered by investigation," and will

"[c]ontact former employers and other acquaintances to verify applicant's employment, health, history, and social behavior." (O*Net No. 43–4041.00). Finally, both the DOT categories and the O*Net categories list the jobs as sedentary. (DOT 237.367–014; O*Net No. 43–4041.00).

Given that the job of call-out operator has yet to join the likes of milkmen as a relic of the past, the Court finds that the ALJ committed no error in relying on it to form his conclusions at Step Five.

### 3. The ALJ Did Not Need to Illicit the VE's Testimony Regarding the Number of Regional Jobs Available.

Plaintiff asserts that the ALJ's Step Five finding is not supported by substantial evidence because there was no testimony elicited from the VE as to how many call-out operator jobs existed within her region. (Pla. Br., No. 8 at 19). The Court disagrees.

The Act is bereft of any requirement that an ALJ rely on evidence of the number of jobs in the regional economy to support their findings. *See* 42 U.S.C. § 423. In fact, it specifically instructs that "[a]n individual shall be determined to be under a disability only if…[she] cannot…engage in any…kind of substantial gainful work which exists in the *national* economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work." 42 U.S.C. § 423(d)(2)(A) (emphasis added). "Work which exists in the national economy" is "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

This provision of the Act is reflected in the Commissioner's regulations, which implement the Act's statutory mandate in the five-step sequential evaluation process applied by the ALJs in disability cases. *See* 20 C.F.R. §§ 404.1505, 401.1520(a), 416.905, 416.920(a). For a plaintiff who cannot perform her own past relevant work at Step Four to be found not disabled at Step Five, the

16

agency must produce evidence of "other work" that the plaintiff can perform. *See Bowen v. Yuckert*, 482 U.S. 137, 146–47 n.5 (1987); 68 Fed. Reg. 51, 153, 51, 155 (Aug. 26, 2003). The "other work (jobs) that [the claimant] can adjust to must exist in significant numbers in the national economy (either in the region where [the claimant] live[s] or in several regions in the country)." 20 C.F.R. §§ 404.1560(c), 416.960(c).

Finally, the Third Circuit has also held that the Commissioner does not need to obtain specific regional job numbers, but rather may rely on testimony regarding the number of available jobs nationally. *See Lamoureux v. Comm'r of Soc. Sec.*, No. 21-1677, 2021 WL 5860738, at *2, *5 (3d Cir. Dec. 10, 2021) (neither the statute nor the rules establish specific evidentiary requirements, and their text does not support Lamoureux's inference that regional-level data is required in every disability proceeding).

Here, as provided by the Act and the relevant regulations, the ALJ elicited testimony from the VE regarding the number of jobs existing in the national economy. (AR 52). Nothing further was required. Additionally, Plaintiff was represented by counsel at her administrative hearing and had an opportunity to ask the VE how many regional jobs were available, but failed to do so. (AR 52–54).

## CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.

        */s/ Christine P. O'Hearn*
        **CHRISTINE P. O'HEARN**
        **United States District Judge**